John A. NAIFY, Gloria A. Naify, James H. Clifton, Janice M. Clifton, Howard R. Hoel, Mary E. Hoel, James P. Gallagher, Elizabeth A. Gallagher, Melvin M. McCurdy, Marlene J. McCurdy, Victor A. Larson, Roy W. Larson, Gary C. Downing, Judith Downing, Plaintiffs-Appellants,

v.

McCLATCHY NEWSPAPERS, a corporation, Eleanor McClatchy, an Individual, C. K. McClatchy, an Individual, James H. Smith, an Individual, O. J. Brightwell, an Individual, James Bonneau, an Individual, Byron Conklin, an Individual, Defendants-Appellees.

No. 77–3239.

United States Court of Appeals, Ninth Circuit.

June 27, 1979.

Timothy H. Fine (argued), San Francisco, Cal., for plaintiffs-appellants.

Richard Haas and George A. Cumming, Jr. (argued), Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants-appellees.

Before BROWNING and ANDERSON, Circuit Judges, and WILLIAMS,* District Judge.

PER CURIAM:

Plaintiffs appeal from the dismissal of their antitrust action against the owner of the Sacramento Bee. We affirm.

For sixteen years plaintiffs distributed the Sacramento Bee to retailers and to vending machines within the City of Sacramento pursuant to distribution contracts terminable by either party on 60-day notice. In 1976 the Sacramento Bee terminated plaintiffs and replaced them with salaried employees. After the terminations, defendants refused to increase sales to two retained distributors to permit them to supply the terminated city distributors with papers. Plaintiffs alleged that both the terminations and the post-termination refusal to sell violated sections 1 and 2 of the Sherman Act. The district court granted summary judgment as to the second claim under both sections of the Act and as to the first claim under section 1 of the Act, but set the first claim for trial insofar as it alleged a violation of section 2 of the Act. After trial, the court granted defendants' motion for directed verdict.

For all practical purposes, the defendants replaced the Bee's entire city distribution system. Nine of the ten city distributors were terminated. The retained distributor delivered papers only to the Sacramento Metropolitan Airport, fifteen miles from the downtown area, and his purchases were de minimus, averaging 90 copies per day.

Plaintiffs' contention that the terminations violated section 1 and section 2 because they were accomplished for the purpose of controlling the price at which defendants' newspapers were sold is disposed of by *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 806 (9th Cir. 1976). Here, as in *Knutson,* defendants substituted distribution through their own employees for distribution through independent distributors. Here, as in *Knutson,* there was no evidence that the terminations were used to coerce or induce other distributors to maintain prices or that other distributors understood the terminations as a threat to do so. Plaintiffs offered nothing more than the suggestion that the termination might have had a disciplinary use, but that is not enough. *See id.* at 806–07.

Plaintiffs were also unable to support their contention that the specific purpose and effect of the terminations was to reasonably restrain trade in violation of section 1 by strengthening the Bee's dominant position in the Sacramento newspaper publication industry and diminishing the ability of the Sacramento Union to compete. Plaintiffs' affidavits offered only speculation that the changeover followed by poor servicing of city newsracks were intended to discourage newsstand sales in favor of home delivery, which in turn would enhance the Bee's attractiveness to advertisers to the disadvantage of the Bee's competitors.

* Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

No evidence was adduced that the change-over actually affected the equilibrium between home and street sales of the Bee or that advertisers switched to the Bee as a consequence. Indeed, the only relevant evidence was to the contrary: the circulation manager of the Union testified that the Bee's changeover to direct sales caused him no fears and had no adverse consequences for the Union. *Compare id.* at 803–04.

Similarly, plaintiffs' trial evidence failed to support their section 2 theory that defendants attempted to monopolize the newspaper business in Sacramento. The only conduct relied upon to establish an intent to monopolize was the termination of the city distributors and the poor servicing of city newsstands and vending machines thereafter. Under *Knutson,* the terminations were not in themselves predatory or indicative of an illegal intent. The poor servicing of street sale customers could be so treated only if the jury accepted plaintiffs' lengthy chain of inferences that poor service was planned to encourage street purchasers to switch to home delivery, that street purchasers would indeed switch rather than cease buying the Bee altogether, that home delivery would increase sufficiently to cause advertisers in turn to switch their accounts to the Bee, and that as a result the Bee would squeeze out competing newspapers. Plaintiffs submitted no substantial evidence in support of any link in this chain. Since no reasonable jury could have found predatory conduct or a specific intent to monopolize because of either the terminations or the subsequent inefficiency of the Bee's self-distribution system, a directed verdict on the section 2 claim was appropriate. *Chisholm Bros. Farm Equipment Co. v. International Harvester Co.,* 498 F.2d 1137, 1139–40, 1144–45 (9th Cir. 1974).

▮ After the terminations, the retained city airport distributor and a country distributor agreed with the terminated distributors to supply them with the Bee. The retained city airport distributor sought to increase his purchases of the Bee from 90 to over 2,500 copies daily and Sunday. The country distributor, who had been purchasing less than 200 copies per day for his country route, sought to purchase over 8,150 copies daily and 13,200 on Sunday. Both requested the additional papers for the express purpose of fulfilling their agreement with the terminated distributors. The Bee refused to supply the quantities requested. Plaintiffs concede that no territorial or customer restriction was imposed on the two distributors; they remained free to sell to the terminated distributors and did so. Only the quantity sold to the two distributors was restricted. Such restrictions do not in themselves violate the antitrust laws. *See Fosburgh v. California & Hawaiian Sugar Refining Co.,* 291 F. 29, 36–37 (9th Cir. 1923). Nor were the restrictions rendered unlawful by the circumstances in which they were imposed. Since defendants' election to substitute a self-distribution system for distribution by independent contractors was lawful, it was not unlawful for defendants to refuse to cooperate with an avowed attempt by the terminated distributors to frustrate defendants' decision to change its method of distribution.

Plaintiffs challenge the trial court's exclusion of certain documentary evidence as irrelevant. The trial judge's determination was well within the court's sound discretion. Fed.R.Evid. 401, 402.

Affirmed.[1]